John E. GERBER III, et al., Plaintiffs,

v.

Bruce BABBITT, Secretary,
Department of the Interior,
et al., Defendants,

Winchester Creek Limited Partnership,
Defendant–Intervenor.

No. CIV. A. 99–2374(JR).

United States District Court,
District of Columbia.

May 15, 2001.

Eric R. Glitzenstein, Daniel R. Vice, Jonathan R. Lovvorn, Meyer & Glitzenstein, Washington, DC, for Plaintiffs.

Mark L. Stermitz, Caroline Blanco, U.S. Department of Justice, Environment and Natural Resources Division, Wildlife and Marine Resources Section, Washington, DC, for Defendants.

Rafe Petersen, Holland & Knight LLP, Washington, DC, for Defendant–Intervenor.

James B. Dougherty, Washington, DC, for Amici National Wildlife Federation.

David H. Thompson, Cooper, Carvin & Rosenthal, Washington, DC, M. Reed Hopper, Anne M. Hayes, Pacific Legal Foundation, Sacramento, CA, for Amici Pacific Legal Foundation.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs bring this action claiming that the Fish and Wildlife Service violated the National Environmental Policy Act, the Endangered Species Act, and the Admin-

istrative Procedures Act by issuing an Incidental Take Permit (ITP) for the. Delmarva fox squirrel in connection with the construction of the Home Port Development at Winchester Creek in Queens County, Maryland. Plaintiffs also allege that the Service was statutorily required to reinitiate consultation once it learned that a proposed roadway would result in increased area road traffic, which is the leading cause of fox squirrel "takes." Before me are cross-motions for summary judgment. For the reasons that follow, defendants' motions for summary judgment will be granted.

### FACTS

Home Port is a residential community development site owned by Winchester Creek Limited Partnership. It is situated in Grasonville, Queen Anne's County on Maryland's Eastern Shore. The area in which Home Port is sited is also one of the last natural habitats for the Delmarva fox squirrel, which was added to the endangered species list in 1967.

In early 1997, Mareen Waterman, president of Winchester Creek Limited Partnership, asked the Fish and Wildlife Service to determine whether an ITP would be required in order for WLCP to proceed with the Home Port development plan. The Service responded that it did not believe the development would "take"[1] any fox squirrels if residents took certain precautionary measures, such as strict enforcement of speed limits and leash laws for domestic pets.

In March 1998, plaintiffs—homeowners near the development and a non-profit membership organization known as Defenders of Wildlife—filed suit against the Service, claiming that its permissive response to Mr. Waterman's inquiry had vio-

lated the ESA, the NEPA and the APA. *See* AR 80, at 2. That suit was dismissed without prejudice pursuant to a stipulation that the Service would "submit to the Federal Register for publication notice of availability of a draft [Habitat Conservation Plan (HCP) ] and application for an [ITP] for the proposed Homeport on Winchester Creek residential development project." Later that month, the Service issued a draft environmental assessment (EA), a draft HCP, and an agreement with WCLP governing the terms of development. The Service published notice in the Federal Register that these documents were available for inspection at its Chesapeake Bay field office, and it mailed courtesy copies of them to plaintiffs pursuant to the stipulation. The courtesy copies did not include a map of the off-site mitigation site referenced in the draft HCP. (Plaintiffs subsequently made a FOIA request to the Service for all documents relating to the Home Port Development. In its FOIA response, the Service took the position that, except for the draft EA and HCP and the ITP application, documents relating to the Home Port site were "privileged and exempt from disclosure under [FOIA]." AR 161.)

Plaintiffs submitted numerous comments to the Service regarding the proposed development, but they maintained in their submissions that they were unable to comment meaningfully on the mitigation site because they lacked any information about it. After the public comment period had ended, the Service, in response to plaintiffs' inquiry, admitted that it had failed to provide them with a map or the location of the off-site mitigation area. In response to public comment, it made the location of the mitigation site and a map available to

---

1. Under the ESA, "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or [ ] attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

the public, but it refused to extend the comment period to allow plaintiffs to address the mitigation site specifically.

In May 1999, the Service announced its approval of the Home Port HCP and issued an ITP. Plaintiffs sent a formal objection, asserting that the Service had failed to adhere to the ESA and the NEPA and again requesting that the comment period be reopened. The Service rejected that request.

Plaintiffs then sued again and moved for a preliminary injunction. I denied that motion on November 17, 1999.

### ANALYSIS

Plaintiffs' motion for summary judgment argues that the Service violated the ESA, the NEPA, and the APA by: 1) failing to make the mitigation site location available for public comment; 2) failing to analyze whether WCLP would "minimize and mitigate" to the "maximum extent practicable" the project's impact; 3) failing to prepare an Environmental Impact Statement (EIS); and 4) failing to reinitiate consultation despite a change in conditions following approval of the ITP.

1. *The availability of the mitigation site location and map*

■ Plaintiffs assert a number of grievances about what they view as a calculated effort on the part of the Service to keep them in the dark about the mitigation site that was offered by WCLP: that the Service wrongfully failed to send them a copy of the site map with their courtesy copy of the other materials; that the Service wrongfully withheld the map from its response to plaintiffs' FOIA request; that they never had specific notice that the map was available for public inspection at the Service's field office; and that probably the map was probably not there and available for inspection anyway.

The record does not permit these grievances to be completely resolved,[2] but they are not dispositive of or even central to the issues in the case. Plaintiffs were able to, and did, provide extensive commentary on the ITP application without knowing the precise location of the mitigation site. Plaintiffs point to no authority for the proposition that they were entitled to know every detail of the HCP.

■ Indeed, plaintiffs have not shown that they would have offered any additional commentary if they had been shown the map. The record reveals that plaintiffs' general concerns about the site were considered by the Service, which is all that is required by NEPA. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352–53, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) (NEPA requires informed decisions, not substantive results, and it does not require mitigation plans be fully developed). And, under the APA's harmless error provision, *see* 5 U.S.C. § 706, there is nothing in either the plaintiffs' prior submissions or their fully informed arguments here that was not adequately considered by the Service during the decision-making process.[3] Any procedural violation

2. The Service's argument that plaintiffs slept on their rights is unpersuasive. Plaintiffs admit that they never attempted to inspect the documents that were publicly available at the field office, but the omission of the map from their courtesy copy appears to have been deliberate. The mitigation site was apparently the subject of a pending real estate transaction as to which the Service had provided Winchester Creek some assurance of confidentiality.

3. The cases cited by plaintiffs are not to the contrary. *Alabama Power Co. v. FERC*, 160 F.3d 7, 10 (D.C.Cir.1998), concerned FERC's total failure to engage in notice and comment. *MCI Telecommunications Corp. v. FCC*, 57 F.3d 1136, 1142 (C.A.D.C.1995), held that the

by the Service in failing to make the mitigation site location and map public "clearly had no bearing ... on the substance of the decision reached." *Steel Manufacturers Ass'n v. EPA,* 27 F.3d 642, 649 (D.C.Cir. 1994) (quoting *Chemical Mfrs. Ass'n v. EPA,* 870 F.2d 177, 202, *clarified,* 885 F.2d 253 (5th Cir.1989)).

2. *The Service's analysis of the proposed development*

■ Plaintiffs raise numerous complaints about the adequacy of the Service's analysis of the proposed development and WCLP's proposed mitigation efforts.

The Service cannot mandate that an applicant for an ITP implement any one particular alternative. While the Administrative Record demonstrates that the Service was aware that moving the access road might result in a slightly decreased incidence of DFS takes, it ultimately concluded that moving the road would require WCLP to stop work on the Home Port project and to reinitiate state zoning and permit application procedures. Given both the Service's and the developer's expertise in such projects, their conclusion that this would render the project impractical is entitled to deference, and plaintiffs have failed to establish that it was arbitrary, capricious or not in accordance with law.

3. *Failure to prepare an EIS*

■ "[A]n EIS must be prepared only when significant environmental impacts will occur as a result of the proposed action." *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d 678, 682 (D.C.Cir.1982). My review of the Service's decision as to whether an EIS is necessary involves evaluating only whether it has taken a "hard look" at the environmental impact and documented "its determination of 'no significant impact.' " *Friends of the Ompompanoosuc v. FERC,* 968 F.2d 1549, 1556 (2d Cir.1992) (quoting *Town of Orangetown v. Gorsuch,* 718 F.2d 29, 34 (2d Cir.1983)). The Service considered all relevant factors, including the best available scientific evidence and the precedential value of the decision, *see* 40 C.F.R. § 1508.27(b)(9), and concluded that the mitigation measures proposed by WCLP would be more than adequate. The Service has taken the required "hard look."

4. *Failure to reinitiate consultation*

■ Plaintiffs' argument that the Service was required to reinitiate consultation rests on its submission that there was "new information ... that may affect [the fox squirrel] or critical habitat in a manner or to an extent not previously considered." 50 C.F.R. § 402.16. Plaintiffs allege that the Service failed to consider: 1) a overpass for Highway 50 and an access road that might be built near the mitigation site; and 2) the potential development of another subdivision near the mitigation site. The Service has convincingly demonstrated that it is not required to reinitiate consultation on either of these grounds. The highway project is not close enough to the mitigation site to pose a threat to the fox squirrel under the Service's guidelines, and any highway project will in any event require separate ESA consultation prior to finalization and construction. The development near the mitigation site was known to the Service at the time of its decision to issue the ITP and is not "new information" requiring additional consultation.

---

notice requirement was not satisfied when the agency provided notice in a footnote to the background section of a notice of proposed rulemaking that ostensibly concerned a different subject. Here, the Service published notice in the Federal Register that specifically addressed the Winchester Project. *See* 63 Fed.Reg. 72,321.

**6**

An appropriate order accompanies this memorandum.

### ORDER

For the reasons stated in the accompanying memorandum, it is this —— day of May, 2001,

ORDERED that plaintiffs' motion for summary judgment [# 53] is **denied**. And it is

FURTHER ORDERED that defendants' motions for summary judgment [# 63, 68] are **granted**.